UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
**SYDNEY ZUNNO**, individually and on behalf of all others similarly situated,

        *Plaintiff*,

v.

**ROOMSTER CORP.,** a New York Corporation,

        *Defendant*.
-------------------------------------------------------X

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sydney Zunno ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Roomster Corp. ("Defendant") to stop its practice of making unsolicited text message calls to cellular telephones and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Sydney Zunno is a natural person and resident of Albuquerque, New Mexico.

2. Defendant Roomster Corp. is a corporation organized under the laws of the State of New York with its principal place of business located at 285 West Broadway, Suite 320, New York, NY 10013.

3. Defendant conducts business throughout this District, the State of New York, and the United States.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 *et seq.*, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, conducts a significant amount of business in this District, solicits consumers in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is registered to conduct business in this District, it conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**COMMON FACTUAL ALLEGATIONS**

A. **Bulk SMS Marketing**

6. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

7. Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

8. When an SMS message call is successfully made, the recipient's cell phone rings,

alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

  **B.**  **<u>Defendant Transmits Text Messages to Consumers Who Do Not Want Them</u>.**

  9.  Defendant owns and operates an online social network service for individuals who wish to find roommates.

  10.  For Defendant to recruit consumers (who pay to use its service and create network profiles and/or search existing profiles for potential roommates), Defendant has resorted to sending text messages to consumers who have not consented to receive them.

  11.  Even worse, these text messages are designed to trick the consumer into thinking that a user of the Roomster site is contacting them when in reality these text messages are created *en masse* to promote and solicit consumers to use and purchase a subscription to Roomster.com which costs $5.95 for a 3 day membership, $14.95 for a 15 day membership, and 29.95 for a 30 day membership.

  12.  In sending these promotional text messages, Defendant took no steps to acquire, and never acquired, the oral or written prior express consent of Plaintiff or the Classes who received the unsolicited text messages.

  13.  Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

  14.  In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant

3

(or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer inasmuch as it has the capacity to make numerous text message calls simultaneously (without human intervention).

15. Defendant was and is aware that these above described text messages were and are being made without the prior express written or oral consent of the text message recipients.

16. Not surprisingly, these practices have led to significant complaints from consumers. These complaints indicate that Defendant uses a variety of different telephone numbers to send its unsolicited and unwelcome texts:

- [2015] They keep texting urging me to get a subscription to website Roomster.com They refuse to say who they r"[1]

- [2015] I posted a want ad for housing on Craigslist and I received some grammatical disasters about Roomster from this number also. Scam."[2]

- [2015] Spam text in a response to a Craigslist post looking for housing. Seems to be an ad for Roomster.com.[3]

- [2015] Every time I update an ad on Craigslist I get robot / spam text messages from numbers like this. The text messages make no sense and are broken up into 2 or 3 different messages. It says to sign up here https://goo.gl/vthxU which seems to go nowhere or to Roomster."[4]

## FACTS SPECIFIC TO PLAINTIFF

17. Plaintiff Zunno is a natural person residing in Albuquerque, New Mexico.

18. On August 24, 2010 Plaintiff Zunno registered her cell phone number on the do not call registry to avoid receiving unsolicited calls and texts.

---

1 *http://800notes.com/Phone.aspx/1-415-853-7139*
2 *http://800notes.com/Phone.aspx/1-415-853-7139*
3 *http://800notes.com/Phone.aspx/1-202-688-7787*
4 *http://donotcall.report/1-320-545-5774.csv*

19.     On March 9, 2016, at 11:58 a.m., Plaintiff received a text message from the phone number (347) 913-8730 on her cellular phone. The text message included a web address and invited Plaintiff to visit a website where she could find a roommate. The web address that the text message contained was actually a "url-shortener" that forwarded to Defendant's website, *roomster.com,* where she could sign up for their paid services.



20.     Plaintiff immediately replied STOP so she would no longer receive these unwanted text messages.

5

21.     Despite her STOP request, Plaintiff received another text message that day, from a different number, that contained another "url-shortener" that forwarded to the Defendant's *roomster.com* website.  Again she replied "STOP."



22.     Again, and despite her requests to stop the text messages, on March 11, 2016, Plaintiff received another text message from Defendant, from yet another number, similar to the others:

6





23.     Plaintiff never consented to receive texts from Defendant. By making unauthorized text message calls as alleged herein, Defendant has caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation, nuisance and invasion of privacy that result from the receipt of such text messages and a loss of value realized for any monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the text messages intentionally interfered with Plaintiff and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components and the wear and tear on the phone, battery and data storage that comes

from unwanted and repeated calls to a cellular phone. In the present case, consumers were additionally subjected to unsolicited text messages without a mechanism for making them stop—given the fact that Defendant's opt out mechanism apparently does not function properly.

24.     In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

25.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seek certification of the following three Classes:

> **No Consent Class**: All persons in the United States who (1) received a text message from Defendant; (2) on his or her cellular telephone (3) from the last four years through present (4) and who provided prior express consent in the same manner as Defendant claims that Plaintiff provided such prior express consent.
>
> **Replied Stop Class**: All persons in the United States who (1) from the last four years to the present, received (2) on their cellphone at least one text message from Defendant, (3) replied "Stop" to the text message, and (4) thereafter received at least one additional text message to their same cellphone number beyond a message simply confirming the opt out, and (5) who did not reauthorize Defendant to send them text messages after they replied Stop.
>
> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant called more than one time on his/her cellphone; (2) within any 12-month period from the last four years to the present, (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of soliciting products or services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it

8

obtained prior express consent to call the Plaintiff.

The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the potential need to amend the class definition following discovery into the size and scope of the alleged Classes.

27. On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

28. There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and such questions predominate over any questions that may affect only individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

    (a) whether Defendant's conduct constitutes a violation of the TCPA;

    (b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

    (c) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

    (d) whether Defendant obtained prior express written consent to contact any class members;

  (e)  whether Defendant's text messages constitute telemarketing,

  (f)  whether, to the extent Defendant's conduct does not constitute telemarketing, Defendant obtained prior express oral consent to contact any class members;

  (g)  whether Defendant honored requests to STOP sending messages or, instead, whether it serially failed to honor such STOP messages;

  (h)  Whether Defendant made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry; and

  (h)  whether Defendant should be enjoined from such conduct in the future.

29. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, received unsolicited spam text message calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of herself and all absent members of the Classes.

30. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interest antagonistic to the interests of the other

members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

31. The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam text messages to the public and to honor their opt-out requests. Likewise, Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

32. This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant. The injury suffered by each individual class member is relatively small

in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

33. Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq*.)**
**(On behalf of Plaintiff and the No Consent Class)**

34. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

35. Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

36. The calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

37. Defendant did not obtain any prior express written or oral consent to make the calls. Likewise, and in violation of 47 C.F.R. § 64.1200, Defendant failed to obtain any prior express written consent that informed the called party that s/he agreed to receive autodialed calls or that providing such consent was not a condition of the use or purchase of any good or service.

38. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

39. Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq*.)**
**(On behalf of Plaintiff and the "Replied Stop" Class)**

40. Plaintiff repeats and realleges the above paragraphs and incorporates them herein by reference.

41. Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Reply Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

42. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

43. These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Replied Stop Class to receive such wireless spam. Indeed, to the extent that any consent was provided in the first place, such consent had been revoked by every Class member since each had responded "STOP" to at least one text message yet continued to receive calls.

44. The text messages to Plaintiff and the Class were made after any consent had been expressly revoked by responding "STOP." This alone violates the TCPA as any subsequent messages that did not merely confirm the opt-out were sent without any consent.

45. Additionally, Defendant's supposed opt-out mechanism isn't cost-free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data. It also doesn't work and requires the user to spend time and energy tracking down someone at Roomster in attempting to get the messages to actually stop.

46. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

47. Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Replied Stop Class.

48. Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant were to temporarily place them on hold.

**THIRD CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227** *et seq.*
**(On behalf of the Plaintiff and Do Not Call Registry Class)**

49. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

53. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

54. Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone

16

solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendant, as set forth in § 64.1200(d)(3).

55. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and Defendant does not have a current record of consent to place telemarketing calls to them.

56. Defendant violated § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as the Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, nor did Defendant maintain policies, available on demand or otherwise, for maintaining an internal do not call list or any policies for training staff and personnel involved in telemarketing in the existence and use of any such internal do not call list.

56. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

57. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

58. In the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Sydney Zunno as the representative of the Classes and appointing her attorneys as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, to honor do not call requests and stop requests, and to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

4. A declaratory judgment declaring that Defendant's text messages violated the TCPA, that Defendant did not institute procedures that comply with the regulatory minimum standards for maintaining a list of persons who ask not to be called/text messaged, that Defendant failed to train its employees and personnel involved in telemarketing in the existence and use of any such list, and that Defendant failed to scrub its list of persons whose phone numbers were registered on the DNC, and that Defendant's refused to honor stop text message requests;

5. An award of reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**SYDNEY ZUNNO**, individually and on behalf of class of similarly situated individuals

Dated: September 20, 2016      By:   /s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: 877.333.9427
Fax: 888.498.8946

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice application to be filed*