

Justin A. MacLean
Tel 212.801.3137
Fax 212.801.6400
macleanj@gtlaw.com

December 14, 2016

**VIA ECF AND EMAIL**

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007
Email: ALCarterNYSDChambers@nysd.uscourts.gov

Re:   *Zunno v. Roomster Corp.*, No. 16-cv-07356 (ALC)
      Defendant's Request for Pre-Motion Conference

Dear Judge Carter:

      We represent defendant Roomster Corp. ("Roomster") in the above-referenced action. Pursuant to Section 2.A. of Your Honor's Individual Practices, we write to request a pre-motion conference in connection with Roomster's anticipated motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the claims alleged under the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. § 227. *et seq.*) in the Complaint filed by plaintiff Sydney Zunno ("plaintiff").

**1.     Plaintiff Lacks Article III Standing Under *Spokeo***

      Plaintiff lacks standing to bring this suit because she fails to "allege an injury that is both concrete ***and*** particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quotation marks omitted). Here, plaintiff alleges that she received five text messages from Roomster or its purported "agent," and that these messages were "unauthorized" because she did not provide consent. Complaint [Dkt. 1] ("Compl") ¶¶ 13, 19, 21, 22, 23. However, merely alleging a "statutory violation" is not sufficient because "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. In *Spokeo*, the Supreme Court emphasized that an "injury in fact" requires both a "concrete" and a "particularized" harm, which must be "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). A "concrete" injury "must be 'de facto'; that is, it must actually exist." *Id*.

      While a "concrete" injury may be intangible, in determining whether an intangible harm constitutes injury in fact, "both history and the judgment of Congress play important

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

* OPERATES AS
  GREENBERG TRAURIG MAHER LLP
+ OPERATES AS
  GREENBERG TRAURIG, S.C.
** STRATEGIC ALLIANCE
∞ OPERATES AS
  GREENBERG TRAURIG LLP
  FOREIGN LEGAL CONSULTANT OFFICE
^ A BRANCH OF
  GREENBERG TRAURIG, P.A.,
  FLORIDA, USA
¤ OPERATES AS
  GT TOKYO HORITSU JIMUSHO
~ OPERATES AS
  GREENBERG TRAURIG GRZESIAK SP.K

The Honorable Andrew L. Carter, Jr.
December 14, 2016
Page 2

_____

roles." *Id.* at 1549. With respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Congress's "judgment is also instructive and important. . . . Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id., quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578 (1992). Nevertheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo,* 136 S. Ct. at 1549. For example, "a bare procedural violation, divorced from any concrete harm, . . ." cannot satisfy the injury-in-fact requirement of Article III. *Spokeo,* 136 S. Ct. at 1549, *citing Summers v. Earth Island Institute,* 555 U.S. 488, 496 (2009). Similarly, if the defendant had maintained an incorrect zip code for the plaintiff, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo,* 136 S. Ct. at 1550.

A TCPA claim is not one "grounded in historical practice" and does not have a close relationship to a harm regarded as a basis for a lawsuit under common law; it is purely a statutory creation. Further, it is not a statute where Congress evidenced an intent to elevate texting as a harm that would on its own justify standing. Indeed, Congress never contemplated that the TCPA – which was enacted in 1991 – would prohibit text messages. The statute nowhere identifies text messages, which did not even exist at that time of the TCPA's enactment. *See, e.g., Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365, 370 (6th Cir. 2015) ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA. In fact, the first text message was not sent until December 3, 1992, almost a full year *after* the December 20, 1991, enactment of the TCPA."; emphasis in original). The problem that Congress sought to address with the TCPA was the increase in unwanted telemarketing phone calls to landline phones. Pub. L. 102-243, § 2, 105 Stat. 2394 (1991). The application of the TCPA to text messaging, telemarking or otherwise, exists *only* because the FCC – not Congress – determined in 2003 that text messages should be treated as "calls" for purposes of the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). Any argument that Congress intended to confer Article III standing is further undermined by the fact that the TCPA's drafters assumed that TCPA claims could be brought in state, not federal court, including small claims court. *See* 137 Cong. Rec. 30,821-30,822 (stating that the TCPA contains a private right of action that "would allow consumers to bring an action in State court . . . preferably in small claims court"). Indeed, for almost two decades after the statute was enacted, it was not even clear that a TCPA claim could be brought in federal court. *See Mims v. Arrow Financial Services*, 132 S. Ct. 740, 751 (2012) (resolving a split among federal circuits and holding that the TCPA does not vest exclusive jurisdiction in state courts). Congressional intent in creating the TCPA thus does not support the inference that Congress intended to elevate to a "legally cognizable injury," based on the mere receipt of a text message, without more (especially if the message is merely informational).

The Honorable Andrew L. Carter, Jr.
December 14, 2016
Page 3

---

Accordingly, standing has been found lacking where the plaintiff could not allege an injury-in-fact in a TCPA claim. *See, e.g., Romero v. Dep't Stores Nat'l Bank*, _ F. Supp. 3d _, 2016 WL 4184099, at *4-6 (S.D. Cal. 2016) (dismissing plaintiff's TCPA suit for lack of standing because "[i]f the defendant's actions would not have caused a concrete, or de facto, injury in the absence of a statute, the existence of the statute does not automatically give a Plaintiff standing"). Plaintiff likewise fails to allege any *facts* to demonstrate that she incurred an injury-in-fact from the five text messages she allegedly received on her cell phone. Plaintiff instead makes mere conclusory assertions of alleged harm that are insufficient under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009). Because plaintiff fails to allege any facts to establish standing under Article III, her claims must therefore be dismissed.

### 2. Plaintiff Fails To State A Claim For Vicarious Liability

Plaintiff cannot state a claim that Roomster is vicariously liable based on the bald assertion that the text messages were sent "on behalf of" Roomster by some unidentified "agent." Vicarious liability under the TCPA must be based on federal common law agency principles. *Dish Network*, 28 F.C.C. Rcd. at 6585-87 (2013). Merely alleging that text messages were sent "on behalf of" another party is insufficient to create vicarious liability under the TCPA. *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139 (E.D. N.Y. 2015) (granting defendant's motion to dismiss a TCPA claim where defendant failed to plead any facts to support an agency relationship between the third party that placed the calls and the defendant and finding that merely alleging "on behalf of" liability is insufficient). Here, plaintiff does not (and cannot) plead facts alleging vicarious liability under any theory of agency. "To plead vicarious liability under the TCPA . . . , Plaintiffs must allege *some* facts regarding the relationship between an alleged principal and agent . . . ." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547 at *7 (S.D.N.Y. Nov. 30, 2015) (emphasis in original). Mere conclusory allegations that one party was the agent of another or "had the right to control the sending of [text messages at issue], without more, fails to plead an agency relationship . . . sufficient to allege vicarious liability" under the TCPA. *Id.* Plaintiff alleges the texts were sent by Roomster's "agent" (*see* Compl. ¶¶ 13, 14, 15, 35, 41, 42, 56) but never once alleges any facts to support the existence of an agency relationship based on actual authority, apparent authority, or ratification. *Jackson*, 88 F. Supp. 3d at 139. Plaintiff's Complaint should therefore be dismissed on this basis.[1]

---

[1] Indeed, plaintiff has no idea who sent the alleged text messages and can allege no facts to establish that the alleged texts were sent by Roomster's "agent." Roomster does not engage in text message marketing of any kind and does not employ or contract with any individuals to engage in text message marketing on its behalf. While plaintiff's counsel has not disputed that the alleged texts were sent by unauthorized affiliates (and not Roomster or its agents), plaintiff insists on proceeding with the claims against Roomster in order to take third-party discovery to identify the actual sender of the alleged text messages. However, the proper procedure would be to file an action against unnamed defendants to take the necessary discovery instead of keeping Roomster in this case solely for the purpose of issuing third-party subpoenas to figure out who the true defendants should be. *See Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 559 (S.D.N.Y. 2004) (ruling that a plaintiff may file an action against unnamed defendants and seeking leave to "serve a subpoena upon a non-party to obtain the identity of each doe defendant"); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 124 (2d Cir. 2010).

The Honorable Andrew L. Carter, Jr.
December 14, 2016
Page 4
_____

                                            Respectfully Submitted,

                                            */s/ Justin A. MacLean*

cc: Stefan L. Coleman, Esq. (via ECF and email)
    Ian C. Ballon, Esq. (via email) (*pro hac vice* to be submitted)