

December 30, 2016

***Via ECF and Email to*:**
Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007
Email: ALCarterNYSDChambers@nysd.uscourts.gov

      Re:    *Zunno v. Roomster Corp., Case No. 16-cv-07356 (ALC)*

Dear Judge Carter:

      My firm represents Plaintiff Sydney Zunno ("Plaintiff" or "Zunno") and the alleged class in the above-referenced case. This letter is sent in response to Defendant Roomster Corp.'s ("Defendant" or "Roomster") request for a pre-motion conference in connection with its anticipated motion to dismiss Plaintiff's Complaint. (Dkt. 11.)[1]

    **I.**    **Roomster's Article III Standing Attack Fails**

      Seizing upon the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (May 16, 2016), Roomster seeks to dismiss the Complaint on the grounds that its unauthorized text message calls[2] fail to constitute "concrete harm".

      This argument should be rejected. Courts facing TCPA claims in the aftermath of *Spokeo* have routinely held that unwanted calls cause concrete injuries. This is because the concreteness of the harm is palatable: Congress recognized that unwanted calls are intrusive and acted well within its power when outlawing them. As one district court recently explained:

> Unlike the statute at issue in *Spokeo* . . . the TCPA section at issue does not require the adoption of procedures to decrease congressionally-identified risks. Rather, . . . the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent. It directly forbids activities that by their nature infringe the privacy-related interests

---

[1] Plaintiff's counsel acknowledges that the instant letter was due within three business days of Roomster's letter. Plaintiff's counsel apologizes profusely for this late filing.

[2] Defendant's argument that the TCPA does not apply to text messages lacks merit. Courts have uniformly held that the TCPA applies with equal force to text message calls as it does to the making of voice calls to cellular phones. See *Satterfield v. Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

> that Congress sought to protect by enacting the TCPA. ***There is no gap—there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.***
>
> ***In any event, section 227 establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, de facto injury.*** . . . American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively directed their conduct at plaintiffs to invade their privacy and disturb their solitude. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15 C 101, 2016 WL 3645195, at *3 (N.D.W.V. June 30, 2016) ("[T]he TCPA can be seen as merely liberalizing and codifying the application of [a] common law tort to a particularly intrusive type of unwanted telephone call.") . . . ***And Congress enacted the TCPA to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion.***
>
> …
>
> In contrast to statutes that impose obligations regarding how one manages data, keeps records, or verifies information, section 227 of the TCPA directly prohibits a person from taking actions directed at consumers who will be actively touched by that person's conduct. ***It does not matter whether plaintiffs lack additional tangible harms like loss of cell phone battery life, actual annoyance, and financial losses; Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, and plaintiffs have alleged such concrete harms that they, themselves suffered.***

*Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, at *5–6 (N.D. Ill. Aug. 23, 2016) (Emphasis added.); *Hewlett v. Consol. World Travel, Inc.*, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) (noting that courts "have consistently held that allegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III") (citing cases); *Ung v. Universal Acceptance Corporation*, 2016 WL 4132244, at *2 (D. Minn. 2016) (same); *Rogers v. Capital One Bank (USA), N.A.*, 2016 WL 3162592 (N.D. Ga. 2016) (same) (citing *Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (receipt of unwanted faxes is concrete injury).

Unlike Roomster, the Court shouldn't find *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016) persuasive. As one court has determined:

> Defendants have also offered *Romero*, which is hardly convincing. Under its rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of these robocalls. Worse, the case ignores the

existence of intangible harms that have been recognized in the legislative history and in the case law. The Court agrees with Plaintiff that *Romero* is an outlier....

*LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *6 (D.N.M. Oct. 19, 2016)

Put simply, plaintiffs such as Zunno who receive unsolicited text messages enjoy Article III standing, and Defendant's proposed Rule 12(b)(1) motion lacks merit.

## II. Roomster's Attack on the Pleadings Also Fails

Defendant's secondary attack is that the Complaint doesn't plead vicarious liability. This also fails. The FCC has rejected the idea that consumers need to show, in their initial pleadings, that a seller is vicariously liable. *See In re Dish Network*, 28 FCC Rcd. at 6584 ¶ 28 ("***[W]e stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.***") (Emphasis added.) Rather, "[t]he FCC has explained that vicarious liability [in the context of the TCPA] may be predicated upon federal common law agency principles." *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *6 (M.D. Fla. Apr. 17, 2015); *see also Toney v. Quality Res., Inc.*, No. 13 CV 42, 2014 WL 6757978, at *10 (N.D. Ill. Dec. 1, 2014) (explaining liability for TCPA violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification").

"An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01, cmt. f(1) (2006). Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.* 42 F.3d 1421, 1439 (3d Cir. 1994). In this case, much is unknown at this time about Defendant's relationship with the sender(s) of the messages at issue. It appears that the messages may be sent by affiliates of Roomster. *See* "Roomster App Manages to Make Bay Area Apartment Hunting Even Harder," Julie Watts, CBS SFBayArea, *available at* http://sanfrancisco.cbslocal.com/2016/09/12/roomster-app-manages-to-make-bay-area-apartment-hunting-even-harder/ (last visited December 30, 2016). Discovery is needed to uncover necessary facts. The allegations, construed in a light most favorable to Plaintiff, survive a Rule 12(b)(6) attack.

Additionally, it is also plausible that Roomster ratified the text messages. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). "[K]nowing acceptance of the benefits of a transaction ratifies the act of entering into the transaction." *Id.* § 4.01 cmt. d. Applied here, Roomster receives the benefits of its affiliates using improper means to drive traffic to its website and it knows its affiliates engage in text message marketing. If Roomster fails to take reasonable steps to stop the messages, then under general ratification principles Roomster has knowingly accepted the benefits produced by the unlawful text messages.

Respectfully submitted,

s/ Patrick H. Peluso
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso LLC
3900 East Mexico Ave., Ste. 300
Denver, Colorado 80210
720-213-0676
**Counsel for Plaintiff**